**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0804-24

MICHAEL R. SCULLY, LLC,

     Plaintiff-Respondent,

v.

WILLIAM E. DOLAN,

     Defendant-Appellant.

_____

        Submitted November 18, 2025 – Decided December 15, 2025

        Before Judges Gilson and Firko.

        On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0001-23.

        William E. Dolan, self-represented appellant.

        Michael R. Scully, LLC, attorneys for respondent (Maurice Napolitano, on the brief).

        Clausen Miller PC, attorneys for respondent (Matthew T. Leis, Carl M. Perri, and Don R. Sampen (Clausen

Miller PC) of the Illinois bar, admitted pro hac vice, on the brief).[1]

PER CURIAM

This appeal arises out of plaintiff Michael R. Scully, LLC's representation of its former client, defendant William E. Dolan. Plaintiff sued defendant for outstanding legal fees and interest on those fees. Defendant filed a counterclaim alleging plaintiff committed legal malpractice.

Defendant, who is self-represented, appeals from two orders: (1) a September 27, 2024 order granting summary judgment in favor of plaintiff and dismissing the counterclaim with prejudice; and (2) a September 29, 2024 order entering judgment in favor of plaintiff and against defendant in the amount of $415,288.12, which was filed on October 4, 2024. Based on our review of the record and the applicable legal principles, we affirm.

## I.

We derive the following facts from the summary judgment motion record viewed in the light most favorable to defendant. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). On

---

[1] For clarification purposes, although one brief was submitted on behalf of respondent, Michael R. Scully, LLC represents respondent on the complaint and Clausen Miller PC, represents respondent on the counterclaim.

December 15, 2011, plaintiff sent defendant a letter memorializing the terms of its representation in connection with a commercial litigation matter. The letter stated plaintiff's rate was $350 per hour and explained the basis for out-of-pocket expenses. Regarding outstanding balances, the letter stated accrued interest at the rate of one percent per month would be added from the date of the billing statement until paid in full.

Plaintiff represented defendant from December 2011 until November 2022 in various matters, including a civil action entitled AECOM Cap. Mgmt., LLC v. Hartz Mountain Indus., Inc.[2] Defendant was a party in the litigation. Following a thirteen-day jury trial, plaintiff obtained a "no cause of action" verdict in defendant's favor. Plaintiff also represented defendant in numerous tax appeal matters and an action in lieu of prerogative writs, which challenged the Borough of Woodcliff Lake's agreement to settle certain property tax appeals involving BMW of North America (BMW).

By February 14, 2017, defendant owed plaintiff $186,375.30 for outstanding fees and expenses. On that date, plaintiff presented defendant with a promissory note, which acknowledged the balance due and that further amounts were expected to be incurred. Defendant signed the promissory note.

---

[2] Docket number HUD-L-5231-13.

In consideration of the execution of the promissory note, plaintiff agreed to continue to represent defendant in his various legal matters.

Subsequent to the promissory note being signed, plaintiff charged defendant an additional $240,880.36 for legal services. This increased defendant's debt to $427,255.66. After the promissory note was signed, defendant paid $106,915 to plaintiff, leaving a balance owed of $320,340.66.

The parties had a breakdown of their attorney-client relationship. Consequently, on November 18, 2022, defendant filed a substitution of attorney discharging plaintiff and substituting himself as a self-represented litigant. On November 23, 2022, plaintiff sent defendant a demand letter, which stated:

> Please accept this letter in lieu of a more formal demand that you pay all outstanding fees and charges owed to my firm [based on] the [p]romissory [n]ote you signed February 14, 2017, not later than sixty . . . calendar days after the date of this demand. . . . [E]nclosed herewith [is] a copy of the November 1st invoice which was emailed to you on November 2nd. The balance owed for charges incurred after the November 1st invoice will be updated next week with a new invoice issued for November's charges.

Defendant did not remit any payment to plaintiff.

On December 30, 2022, plaintiff filed a complaint against defendant seeking to recover the fees and expenses it was owed. Plaintiff alleged six causes of action: breach of a promissory note, book account, asserted statutory

4

and equitable liens, unjust enrichment, and quantum meruit. On February 24, 2023, defendant filed a response—not an answer—and ultimately counterclaims against plaintiff sounding in legal malpractice, breach of fiduciary duty, gross negligence, willful and wanton misconduct, and for violations of the Rules of Professional Conduct.

On March 31, 2023, plaintiff filed a motion for partial summary judgment. On May 12, 2023, the court denied the motion as premature because discovery had not been conducted on defendant's counterclaims. Plaintiff's counsel then filed an answer to defendant's counterclaims. Defendant served an affidavit of merit (AOM) pursuant to N.J.S.A. 2A:53A-27, but never served an expert report in support of his legal malpractice claims against plaintiff.

Following the close of discovery, plaintiff moved for summary judgment to dismiss defendant's counterclaims and for summary judgment on its affirmative collection claims. Plaintiff argued defendant failed to produce an expert report and he could not support any of his counterclaims, which sounded in malpractice.

On September 27, 2024, oral argument was held on plaintiff's motions for summary judgment. The court rendered an oral decision that day and granted plaintiff's motions to dismiss the counterclaims and in favor of its affirmative

5

collection claims. The court found plaintiff's fee arrangements with defendant and the $350 hourly rate charged were "eminently reasonable" and noted the rate had never increased during the years of representation.

The court determined defendant's "rebuttal" of the fees owed centered on plaintiff's "alleged delays in litigation to run up the bill with no results" and that defendant contested certain billing entries. However, the court reasoned defendant failed to produce an expert report, "despite extensions and multiple orders . . . enumerating discovery deadlines." The court highlighted that New Jersey courts have held expert testimony is ordinarily required in a legal malpractice case, "unless the attorney's duty is so basic that it may be determined by the [c]ourt as a matter of law," citing Kranz v. Tiger, 390 N.J. Super. 135, 147 (App. Div. 2007). The court emphasized that expert testimony is required in a legal malpractice case involving "complex transactions and litigation" to aid the trier of fact in determining the issue of proximate cause, citing Froom v. Perel, 377 N.J. Super. 298, 318 (App. Div. 2005). The court concluded plaintiff was entitled to summary judgment as to defendant's counterclaims as a matter of law because he failed to provide any expert report or testimony demonstrating plaintiff's alleged breach of the standard of care in its representation of defendant.

A-0804-24

Regarding plaintiff's fee, the court found there was "no competent evidence presented" that would raise a material, factual issue on the issue of outstanding fees and expenses. The court determined defendant had no grounds to dispute he had signed the promissory note. A memorializing order was entered that day granting plaintiff's motions for summary judgment dismissing defendant's counterclaims with prejudice and granting plaintiff's motion for summary judgment on its affirmative collection claim.

In the September 29, 2024 order entered on October 4, 2024, the court entered judgment after receiving the written agreement and billing invoices provided by plaintiff in the principal amount of $320,340.66, plus pre-judgment interest in the amount of $94,947.46, for a total of $415,288.12. This appeal followed.

Before us, defendant raises the following arguments:

(1) plaintiff failed to file a substitution of attorney;

(2) plaintiff's legal malpractice counsel did not file a notice of appearance;

(3) the promissory note is an unlawful contract which plaintiff repeatedly breached;

(4) defendant was deprived of his Fifth and Fourteenth Amendment rights;

(5) the court showed judicial bias;

A-0804-24

(6) the court erred in granting plaintiff's motion for summary judgment on the counterclaim; and

(7) the court erred in granting plaintiff's motion for summary judgment on plaintiff's affirmative collection claim.

## II.

### A.

First, we address defendant's arguments that plaintiff failed to file a substitution of attorney and its legal malpractice counsel—Clausen Miller PC—did not file a notice of appearance. Defendant maintains the complaint designates Michael R. Scully, Esq. as plaintiff's trial counsel pursuant to Rule 4:25-4, however, Carl M. Perri, Esq. of Clausen Miller PC, filed an answer to the counterclaim and is also designated as trial counsel. Defendant posits both attorneys are designated as trial counsel on the "very same claim" in contravention of Chief Justice Stuart Rabner's February 8, 2018 Notice to the Bar that requires the filing of a substitution of attorney "where a law firm seeks to transfer a matter to another law firm."[3] Sup. Ct. of N.J., Notice to the Bar: Relaxation of Rule 1:11-2 to Require a Notice of Appearance Where an Attorney

---

[3] This directive was distributed as a Notice to the Bar on February 15, 2018.

A-0804-24

<u>Initially Appears In a Matter</u> (Feb. 15, 2018).  Defendant's argument is misguided.

Our Supreme Court has expressly foreclosed this argument in a separate 2015 Notice to the Bar that stated a substitution is not required of an attorney taking the place of a self-represented party:

> Pursuant to N.J. Const. Art. VI., sec. 2 par. 3, it is ORDERED that the provisions of <u>Rule</u> 1:11-2 ("Withdrawal or Substitution") of the Rule Governing the Courts of the State of New Jersey are supplemented and relaxed so as to require an "attorney retained by a client who had appeared [self-represented]" to file a Notice of Appearance, rather than a Substitution of Attorney.
>
> [Sup. Ct. of N.J., <u>Notice to the Bar:  Relaxation of Rule 1:11- 2 to Require a Notice of Appearance Where an Attorney Initially Appears In a Matter</u> (Feb. 20, 2015).]

The same accompanying Notice to the Bar states "a [s]ubstitution of [a]ttorney pleading should be used only in those situations:  (1) where an attorney seeks to withdraw from a matter; or (2) where one attorney is being substituted for another attorney in the matter." <u>Ibid.</u>  Moreover, <u>Rule</u> 1:11-2(c) also forecloses defendant's argument, which provides in relevant part:

> Appearance by Attorney for Client Who Previously Had Appeared [Self-Represented].  Where an attorney is seeking to appear representing a client who previously appeared [self-represented], the attorney must file a notice of appearance, not a substitution of

A-0804-24

attorney, and pay the appropriate notice of appearance fee.

Instead of relying on the 2015 Notice to the Bar, defendant misconstrues a 2018 Notice to the Bar as requiring a substitution of attorney when any attorney joins any case, even if the other attorney is not withdrawing from the case. In pertinent part, the Notice to the Bar states:

> Pursuant to N.J. Const. Art. VI., sec. 2 par. 3, it is ORDERED that the provisions of Rule 1:11-2 ("Withdrawal or Substitution") of the Rule Governing the Courts of the State of New Jersey are supplemented and relaxed so as to clarify that a matter filed and pending with the court belongs to the law firm, law practice and professional corporation, non-profit or government entity engaged in the practice of law.
>
> It is FURTHER ORDERED that the filing of a substitution of attorney is required where (1) an attorney's law practice or law firm dissolves; (2) an attorney's law practice or law firm merges with another law firm; (3) an attorney is disbarred from practice, resulting in the dissolution or merger of that law practice or law firm; (4) an attorney leaves a law firm and a client of that law firm seeks to remain with that attorney; or (5) a law firm seeks to transfer a matter to another law firm.
>
> . . .
>
> [Sup. Ct. of N.J., Notice to the Bar:  Filing Practices for Substitutions of Attorney and Notices of Appearance - Rule Relaxation (Feb. 15, 2018).]

Here, plaintiff originally represented itself on the allegations set forth in the complaint and has continued to do so. However, after defendant filed his counterclaims, Clausen Miller PC was engaged to represent plaintiff as to the counterclaims only and not to prosecute the complaint. These are not the same claims as defendant asserts. Thus, Clausen Miller PC was only required to file a notice of appearance relative to its representation of plaintiff as to the counterclaim. And, Clausen Miller PC was not required to file a substitution of attorney because plaintiff was not seeking to "transfer" prosecution of the complaint to another law firm.

Moreover, defendant has not shown how the alleged failure to file a substitution of attorney had any effect on the summary judgment decisions rendered by the court. Therefore, we reject defendant's argument on both these grounds.

B.

Next, defendant contends the promissory note is an illegal contract, which plaintiff "repeatedly breached." Defendant argues the promissory note must be declared "void ab initio" because plaintiff procured it by "deception" and "violated RPC 8.4(c)," which states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

A-0804-24

Defendant asserts plaintiff "created a false impression" about its accomplishments in handling tax appeals and municipal work. For the first time on appeal, defendant claims the promissory note is defective because it contains no end date, is one-sided, ambiguous, has undefined business terms, lacks a payment schedule, was signed under duress, the mortgage was never presented or executed, and there is no severability clause.

Appellate review is generally limited to issues presented to the trial court, absent jurisdictional concerns or matters of substantial public interest. Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:6-2 (2026); see N. Haledon Fire Co. No. 1 v. Borough of North Haledon, 425 N.J. Super. 615, 631 (App. Div. 2012). Defendant's claims on this issue do not implicate jurisdiction or the broader public interest. Thus, we reject the new arguments as a basis for reversal. Nevertheless, for the sake of completeness, we will address defendant's arguments.

Well-settled contract law provides that "[c]ourts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" In re County of Atlantic, 230 N.J. 237, 254 (2017) (alteration in original) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)). "A reviewing court must

consider contractual language 'in the context of the circumstances' at the time of drafting and . . . apply 'a rational meaning in keeping with the expressed general purpose.'" Ibid. (alteration in original) (quoting Sachau v. Sachau, 206 N.J. 1, 5-6 (2011)).

"The primary standard governing the interpretation of an integrated agreement is to use 'the meaning that would be ascribed to it by a reasonably intelligent person who was acquainted with all the operative usages and circumstances surrounding the making of the writing.'" YA Glob. Invs., L.P. v. Cliff, 419 N.J. Super. 1, 11 (App. Div. 2011) (quoting Deerhurst Ests. v. Meadow Homes, Inc., 64 N.J. Super. 134, 149 (App. Div. 1960)). "'[I]f the contract into which the parties have entered is clear, then it must be enforced' as written." County of Atlantic, 230 N.J. at 254 (alteration in original) (quoting Maglies v. Est. of Guy, 193 N.J. 108, 143 (2007)). The interpretation of a contract is subject to de novo review. Ibid.

Here, based upon our de novo review, we conclude the promissory note is valid and enforceable. The record shows the promissory note was prepared by plaintiff in 2017, and defendant voluntarily signed it. Moreover, the promissory note set forth defendant's agreement to pay the principal amount of fees then outstanding, including additional amounts subsequently incurred, for the accrual

of interest at an agreed rate, and payment of interest, attorney's fees, and collection expenses. We are convinced the promissory note contained adequate consideration for plaintiff to continue representing defendant in exchange for his agreement to pay the indebtedness owed on the terms set forth in the promissory note.

There is no evidence in the record to support defendant's newly minted argument that he signed the promissory note under duress. Duress is "that degree of constraint or danger, either actually inflicted or threatened and impending, sufficient in severity or in apprehension to overcome the mind or will of a person of ordinary firmness . . . ." Smith v. Est. of Kelly, 343 N.J. Super. 480, 499 (App. Div. 2001) (quoting Rubenstein v. Rubenstein, 20 N.J. 359, 365 (1956)). A party seeking to be relieved of his or her contractual obligation must provide "clear and convincing proof" of duress. Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (quoting DeCaro v. DeCaro, 13 N.J. 36, 97 (1953)).

Here, defendant provided no proof of duress whatsoever. Thus, we agree with the court that defendant had no grounds to dispute he had voluntarily signed the promissory note. Defendant's contention that plaintiff breached the "continuation of services" obligation contained in the promissory note is belied

by the record. On the contrary, plaintiff continued to provide legal services to defendant until November 2022, including the action in lieu of prerogative writs and tax appeals matters. For these reasons, we reject defendant's arguments.

C.

Defendant next argues he was deprived of his Fifth and Fourteenth Amendment rights. Defendant contends the court was "made aware of plaintiff's serial violations of the [RPC's]" and improvidently denied defendant's motion to extend the discovery end date (DED) to give him time to "finish" his expert report but granted plaintiff 233 days of discovery extensions. Defendant maintains plaintiff "stonewalled on discovery," evaded depositions, and refused to produce emails between the Borough of Woodcliff Lake and BMW representatives. Defendant requests this court to grant him ninety days to complete his expert report and to permit him to examine plaintiff's business and personal computers and emails. We reject defendant's arguments.

We first address the court's denial of plaintiff's motion to extend the DED to allow for the submission of an expert report. "Our scope of review of this procedural ruling is a narrow one." Quail v. Shop-Rite Supermarkets, Inc., 455 N.J. Super. 118, 133 (App. Div 2018). We review a trial court's discovery rulings for abuse of discretion. Pomerantz Paper Corp. v. New Cmty. Corp.,

15

207 N.J. 344, 371 (2011).  An abuse of discretion "arises when a decision [was] 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)).  That said, "appellate courts are not to intervene . . . absent an abuse of discretion or a judge's misunderstanding or misapplication of the law."  Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017) (citing Pomerantz, 207 N.J. at 371).

Applying these principles, we discern no abuse of discretion in the court's denial of defendant's motion to extend the DED to retain an expert.  The record shows defendant had already obtained a sixty-day extension to provide an attorney's AOM after plaintiff consented to an extension by way of stipulation.  In addition, the DED was extended by consent for sixty days on November 15, 2023, and extended again on February 16, 2024, for another ninety-one days.  Further, on February 16, 2024, an order granting plaintiff's motion to extend the DED was granted until May 21, 2024.  Finally, the DED was extended again on April 26, 2024, until August 10, 2024.  The April 26, 2024 order clearly stated defendant had to serve an expert report by June 17, 2024.

16

However, instead of complying with that deadline, defendant filed a motion on June 19, 2024 to compel plaintiff's deposition on or before August 10, 2024 "with a special [facilitator] present to ensure complete answers will be provided by . . . plaintiff," extend discovery to November 10, 2024, extend the deadline for defendant's expert report to October 10, 2024, and for appointment of a forensic to examine plaintiff's business and personal computer hard drives and handheld devices. Defendant also moved to compel plaintiff to submit its business and personal computer hard drives for inspection on or before July 31, 2024. On July 5, 2024, the court denied defendant's motion, finding there was no need for a special facilitator, to conduct a forensic search of plaintiff's computers, or to extend the DED.

Under these circumstances, we discern no abuse of discretion by the court's denial of the DED extension. The court informed defendant in no uncertain terms that an expert report was required. Defendant's argument is devoid of merit.

D.

Defendant claims the court showed judicial bias by not acknowledging his motion to declare the promissory note void ab initio; ignoring RPC violations; allowing Clausen Miller PC to file motions and stipulations without "standing";

17

denying his motion to extend the DED; denying his adjournment requests; relying on hearsay evidence from plaintiff; ordering him to pay $19,341.69 more than plaintiff demanded in its complaint; increasing the prejudgment interest from $94,947.46 to $117,039.30 by accepting certifications from an employee "beholden to plaintiff"; and accepting hand-scribbled notes from plaintiff instead of "Timeslips" billing. These purported instances of bias, defendant argues, resulted in the improper rulings against him, warranting reversal.

"The conduct of a trial . . . is within the discretion of the trial court." Persley v. N.J. Transit Bus Operations, 357 N.J. Super. 1, 9 (App. Div. 2003) (citing Casino Reinvestment Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 492 (App. Div. 2000)). This discretion is not disturbed "unless there is a clear abuse of discretion which has deprived a party of a fair trial." Ibid. (citing Daisy v. Keene Corp., 268 N.J. Super. 325, 334 (App. Div. 1993)).

Guided by these principles, we conclude defendant's complaints of judicial bias lack merit. In reviewing the entire record, we note defendant was granted extensions to serve an AOM and to extend the DED a final time on April 26, 2024. When the court refused to extend the DED again, there was no showing of judicial bias because the court had already granted both parties multiple DED extensions.

18

Regarding the judgment exceeding the amount demanded in the complaint, paragraph four of the promissory note provides:

> In the event legal proceedings are required to collect any amount due hereunder, [defendant] agrees to pay in addition to the outstanding unpaid principal balance of the [i]ndebtedness: (a) interest at the rate of five . . . percent per annum on the amount outstanding calculated from the date of this [p]romissory [n]ote until the date of payment in full; and (b) reasonable legal fees, court costs and all associated expenses to pursue, to arbitrate, to litigate and/or (as reasonably required) to collect any amount outstanding.

Thus, the judgment accurately calculated the principal and interest due in accordance with paragraph four of the promissory note. The court did not err in entering judgment in an amount exceeding the demand in the complaint in light of paragraph four of the promissory note. Our review of the record convinces us that the court did not show bias toward defendant, and we have no doubts about the court's impartiality. See De Nike v. Cupo, 196 N.J. 502, 517 (2008). Therefore, reversal is not warranted.

### III.

Finally, defendant argues the court erred in granting plaintiff's motions for summary judgment. Defendant maintains there are genuine issues of material fact pertaining to plaintiff: practicing outside its area of expertise, failing to appeal from the dismissal of the complaint in lieu of prerogative writs

19

action, recklessly exposing him to $26,000,000 in counterclaims, and refusing to pursue spoliation claims and sanctions.

We review a grant of summary judgment de novo, applying the same standard as the trial court.  Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).  "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  We do not defer to the trial court's legal analysis or statutory interpretation.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A claim for legal malpractice is "a variation on the tort of negligence." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 357 (2004). To establish a prima facie case of legal malpractice, a party must demonstrate:

(1) the existence of an attorney-client relationship creating a duty of care upon the attorney to the party; (2) the breach of that duty by the attorney; (3) such breach was the proximate cause of injury to the party; and (4) plaintiff sustained damages.  See, e.g., Jerista v. Murray, 185 N.J. 175, 190-91 (2005); Kranz, 390 N.J. Super. at 147.  The proximate causation prong is satisfied when the attorney's negligent conduct is a substantial contributing factor in causing the client's loss.  Lamb v. Barbour, 188 N.J. Super. 6, 12 (App. Div. 1982).

This case is not one of "common knowledge" in which "the questioned conduct presents such a clear breach of an . . . obvious professional norm that the fact-finder could resolve the dispute based on its own ordinary knowledge and experience and without resort to technical or esoteric information . . . ." Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, PC v. Ezekwo, 345 N.J. Super. 1, 12 (App. Div. 2001).  Thus, expert testimony was required to establish plaintiff's legal malpractice claim.

Expert testimony is generally required to prove legal malpractice.  Kranz, 390 N.J. Super. at 147.  Expert testimony is required in professional malpractice claims where the issue to be resolved is "so esoteric that the average juror could not form a valid judgment as to whether the conduct of the professional was reasonable." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996);

21

see also Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982). Where "'the duties a lawyer owes to his client are not known by the average juror,' expert testimony must necessarily set forth that duty and explain the breach." Buchanan v. Leonard, 428 N.J. Super. 277, 288 (App. Div. 2012) (quoting Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 78 (App. Div. 2007)).

Based upon our de novo review, the court properly granted plaintiff's motions for summary judgment. In the present matter, defendant's counterclaim against plaintiff for legal malpractice had to be supported by expert opinion. Sommers, 287 N.J. Super. at 10. Such an expert must detail the standard of care for plaintiff's attorneys and identify how those professionals deviated from that standard. See Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103 (App. Div. 2001). Consequently, we conclude summary judgment was properly granted in dismissing defendant's counterclaim.

Regarding plaintiff's affirmative collection claim, defendant failed to present any competent evidence that would raise a genuine issue of material fact to defeat summary judgment. Plaintiff produced its written fee agreement, billing invoices, and the promissory note in support of its claim. Based upon our de novo review, defendant failed to present any genuine issue of material fact under Rule 4:46-2 to refute plaintiff's proofs on the reasonableness of its

22

fees. The evidence was so one-sided here, and plaintiff was entitled to prevail as a matter of law.

To the extent that we have not addressed defendant's remaining contentions, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0804-24